# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

CHAD RYAN HOFSTAD,

    Plaintiff,

  v.                                                           Case No. 21-CV-352-SCD

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Chad R. Hofstad suffers from chronic back pain and several mental impairments. In 2013, he applied for social security benefits claiming disability based on psychosis, hypertension, and degenerative disc disease. The Social Security Administration denied his claim three times, including twice following a judicial remand. In the latest decision, an administrative law judge concluded that Hofstad had moderate mental difficulties but that he could work with certain limitations, namely only occasional interaction with coworkers and supervisors and no interaction with the public. Hofstad again seeks judicial review, this time arguing: (1) that the Commissioner of the Social Security Administration failed to comply with the district court's remand order, (2) the ALJ erred in evaluating the opinions of the doctors hired by the agency to evaluate his claim, and (3) the ALJ failed sufficiently to explain his assessed workplace-interaction limitation. Because the ALJ failed to provide a valid explanation for rejecting the opined workplace-interaction limitation of the agency's own consultants, and because that error may have affected Hofstad's assessed capabilities, I will reverse the decision denying Hofstad disability benefits and remand the matter for further

proceedings.

BACKGROUND

Hofstad was born in in 1971. *See* R. 56.[1] He grew up in Cudahy, Wisconsin, took regular education classes, and graduated from high school in 1989. *See* R. 475, 655, 2463–64. After graduation, Hofstad served briefly in the Army National Guard. He later obtained a certification in welding and worked for many years in construction or as a welder. However, he had trouble keeping a job, as he often fought with coworkers, leading to him quitting or being fired.

In June 2013, Hofstad applied for disability insurance benefits and supplemental security income, alleging disability due to psychosis, hypertension, and lumbar degenerative disc disease. *See* R. 214–21, 239. The agency ordered Hofstad to undergo a consultative psychological examination with Jeremy Meyers, EdD. *See* R. 251. Dr. Meyers examined Hofstad on September 6, 2013, and completed a six-page report of his findings. *See* R. 474–79. He diagnosed Hofstad with anger control disorder, anxiety disorder, and depression. R. 478. In the prognosis section of the report, Dr. Meyers wrote, "The results of this psychological evaluation suggest that with psychiatric and other medical attention along with job coaching and placement assistance, a generally favorable long-term prognosis can be considered." *Id.* He also authored a statement of work capacity, opining that Hofstad should be able to understand, remember, and carry out simple instructions subject to his report of physical limitations; Hofstad may have "some difficulty" responding appropriately to supervisors and coworkers because of paranoid ideation; Hofstad should be able to maintain concentration and attention and meet work pace demands (again subject to orthopedic pain);

---

[1] The transcript appears on the docket at ECF No. 16-1 to ECF No. 16-10.

and Hofstad may have some difficulty withstanding anything more than routine work stress, but he should be able to adapt to the kind of jobsite changes he would find in most semi-skilled work environments, "if he feels like doing so." *Id.*

The Social Security Administration denied Hofstad's disability applications at the state-agency level of review. *See* R. 93–150. The reviewing state-agency consultants noted Dr. Meyer's report and characterized Dr. Meyers' medical opinion as comprising both the prognosis section and the statement-of-work-capacity section of the report. R. 96–97, 109–10, 124, 138. The reviewing consultants found Dr. Meyers' opinion consistent with the medical findings and assigned it "great weight." R. 101, 114, 129, 143. Specifically, they noted that, "[i]f [Hofstad] was to go to counseling and take meds there could be improvement and with job coaching he should be able to work in a less stress[ful] environment." *Id.*

Hofstad's disability claim has yo-yoed up and down since then. ALJ Robert M. Senander held an evidentiary hearing on Hofstad's applications, *see* R. 39–91; in December 2015, the ALJ issued an unfavorable decision, *see* R. 14–91; and the Social Security Administration's Appeals Council denied Hofstad's request for review, *see* R. 6–12. Hofstad sought judicial review of the ALJ's decision, *see* R. 842–49, and while that federal action was pending, the agency gave Hofstad's applications another look. Larry Kravitz, PsyD, and Darrell Snyder, PhD, reviewed the psychological records at the initial and reconsideration levels, respectively. *See* R. 850–79, 891–929. Both reviewing psychologists determined that Hofstad was moderately limited in his ability to interact with others. R. 855–56, 859–62, 870–71, 874–77, 899–901, 904–06, 918–19, 923–25. Dr. Kravitz found that Hofstad could handle only "brief and superficial" contacts with coworkers and supervisors but would work best in a setting with no required public contact. R. 856, 861, 871, 876. Dr. Snyder phrased his finding

3

slightly differently, indicating that Hofstad could handle "brief superficial contact" in the workplace. R. 906, 925. The state agency again determined that Hofstad was not disabled and denied his applications. *See* R. 850–81, 891–930.

In the meantime, the district court remanded the matter to the Social Security Administration for further proceedings. *See* 882–90. Hofstad had a hearing before a different ALJ (Brent Bedwell), *see* R. 706–57; in June 2018, the ALJ issued a second unfavorable decision, *see* R. 939–72; and the Appeals Council overruled Hofstad's written objections and declined to assume jurisdiction over the case, *see* R. 699–705.

Hofstad sought judicial review of the ALJ's 2018 decision. *See* R. 1832–35. He filed a brief arguing (among other things) that the ALJ erred in evaluating the opinions of Dr. Meyers and Dr. Kravitz. *See* R. 2095–2115. The Commissioner did not file a brief in support of the ALJ's decision. *See* R. 1832–35. Instead, the parties agreed to remand the matter for further proceedings. *See* R. 1838–39. The district court adopted the parties' proposed remand order, which instructed the Appeals Council to remand the matter to an ALJ "to develop the administrative record as necessary and issue a new decision that reevaluates Plaintiff's residual functional capacity, Plaintiff's symptoms, the medical opinion evidence, and following the sequential evaluation process, determines whether Plaintiff is disabled." R. 1837.

The Appeals Council vacated the ALJ's 2018 decision and remanded the matter to ALJ Bedwell. *See* R. 1841–46. Relevant here, the Appeals Council instructed the ALJ to "[g]ive further consideration to the nonexamining source opinions, including those of Drs. Kravitz and Snyder, pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence." R. 1843. The Appeals Council also instructed the

4

ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945, Social Security Rulings 85-16 and 96-8p)." *Id.* The Appeals Council's remand order did not mention Dr. Meyers' opinion.

The ALJ held another hearing, *see* R. 1786–1824, and in January 2021, issued a written decision finding (for a third time) that Hofstad was not disabled, *see* R. 1748–85. The ALJ considered Hofstad's applications under 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which set forth a five-step process for evaluating disability benefits claims. The only part of that evaluation at issue here is the ALJ's assessment of Hofstad's residual functional capacity—that is, his maximum capabilities despite his limitations, *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ determined that Hofstad has the RFC to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with several additional limitations. *See* R. 1758. As far as interacting with others, the ALJ found that Hofstad "can have occasional interaction with coworkers and supervisors, but no interaction with the public." *Id.* The assessed RFC did not mention the need for any job-coaching services. In assessing that RFC, the ALJ considered Hofstad's subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative findings. *See* R. 1758–72.

The ALJ significantly altered his consideration of Dr. Kravitz's and Dr. Snyder's findings, ultimately adopting nearly all their opined limitations. *Compare* R. 955–56 *with* R. 1769–70. However, according to the ALJ, the evidence did not support limiting Hofstad to no more than brief and superficial contact with coworkers and supervisors, as the reviewing psychologists had suggested. The ALJ explained that Hofstad's medications effectively managed his symptoms (when he took them), Hofstad's mental-status examinations revealed

5

generally normal findings, and Hofstad's reported activities—like going shopping, attending a fireworks show, and having one or two close friends—were inconsistent with the reviewing psychologists' opined workplace-interaction limitation.

The ALJ's evaluation of Dr. Meyers' psychological report was nearly identical to his 2018 evaluation. *Compare* R. 957 *with* R. 1767–68. Relevant here, the ALJ determined that Dr. Meyers' assessment that Hofstad would have "some difficulty" responding to supervisors and coworkers was "generally supported by the evidence showing that [Hofstad] reported feelings of anxiety, difficulty getting along with others, and paranoia." R. 1768. The ALJ noted, however, that Dr. Meyers' assessment "was somewhat vague because [he] did not set forth whether [Hofstad] had mild, moderate, marked or extreme limitations for social interactions." *Id.* The ALJ also noted that Dr. Meyers did not assess Hofstad's ability to interact with the public. The ALJ did not mention Dr. Meyers' statement about job coaching. However, when discussing the psychological report earlier in the decision, the ALJ noted that "Dr. Meyers believed that [Hofstad] had a favorable long-term prognosis if he received the appropriate treatment." R. 1761.

Ultimately, the ALJ determined that Hofstad was not disabled because, given his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. *See* R. 1772–75.

The ALJ's 2021 decision became the final decision of the Commissioner after remand because Hofstad did not file written exceptions and the Appeals Council did not assume jurisdiction over the case. *See* 20 C.F.R. §§ 404.984, 416.1484.

On March 18, 2021, Hofstad filed this action seeking judicial review of the Commissioner's final decision denying his claim for disability benefits under the Social

6

Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The clerk of court reassigned the matter to me in April 2021, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 42, 43. Hofstad filed a brief in support of his disability claim, ECF No. 23; Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a brief in support of the ALJ's 2021 decision, ECF No. 38; Hofstad filed a reply brief, ECF No. 47; and Kijakazi filed a sur-reply, ECF No. 53.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's final decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's final decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834,

7

837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

# DISCUSSION

Hofstad seeks to reverse the Commissioner's decision and remand the matter for further proceedings due to four alleged errors. First, Hofstad maintains that the Commissioner failed to comply with this court's previous remand order. Second, according to Hofstad, the ALJ erred in evaluating several of Dr. Meyers' opinions. Third, Hofstad contends that the ALJ failed to sufficiently explain why he didn't incorporate in his RFC assessment Dr. Kravitz's and Dr. Snyder's opined workplace-interaction limitation. Fourth, in Hofstad's view, the ALJ failed to explain why he limited the frequency of Hofstad's workplace interactions but not their quality.

I. **Whether the Commissioner's Alleged Noncompliance with the District Court's Remand Order Requires Remand**

In 2020, a different judge in this district remanded Hofstad's disability claim to the Commissioner to reevaluate "the medical opinion evidence," among other things. R. 1837. The Appeals Council's remand order, however, was more specific: it instructed the ALJ to reassess the findings of reviewing state-agency psychologists Dr. Kravitz and Dr. Snyder. See R. 1843–45. According to Hofstad, the Appeals Council's remand order impermissibly modified the district court's order and limited the scope of the proceedings on remand by implying that the ALJ didn't need to reevaluate any of the other medical opinion evidence in the record. Hofstad points to the ALJ's latest decision—which copied nearly verbatim the previous analysis of Dr. Meyers' opinion, despite Hofstad pointing out specific errors in the ALJ's evaluation of that opinion—as proof that the ALJ thought he had to reconsider only the findings of Dr. Kravitz and Dr. Snyder.

8

I decline to decide whether the Commissioner's failure to comply with a district-court remand order constitutes an independent basis to reverse her final decision denying social security disability benefits. In a similar context, the Seventh Circuit has said that "[t]he question whether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011); *see also Wilkins v. Barnhart*, 69 F. App'x 775, 779 (7th Cir. 2003) (holding that the ALJ's alleged failure "to comply with the directives in the Appeals Council's several remands . . . is not relevant to [the court's] review of the ALJ's decision"). Rather, the task of a reviewing court "is simply to decide whether the ALJ applied the correct legal standards and reached a decision that is supported by substantial evidence." *Wilkins*, 69 F. App'x at 779 (citing 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Hofstad has not presented any reason to differentiate between an ALJ's alleged failure to comply with an Appeals Council's remand order and the Commissioner's alleged failure to comply with a district-court remand order. In both situations, the merits of the plaintiff's arguments are more appropriately addressed within the usual standards of § 405(g) review: legal compliance and substantial evidence.

## II. Whether the ALJ Erred in Evaluating Dr. Meyers' Psychological Report

As to the merits, Hofstad first argues that the ALJ erred in evaluating the psychological report authored by Dr. Meyers, a consulting mental-status examiner hired by the Social Security Administration. "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley*, 758 F.3d at 839. "But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to

9

cause a reviewing court to take notice and await a good explanation for this unusual step." *Id.* (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). In other words, "[a]n ALJ may not discount the opinion of an examining physician without a valid explanation." *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) (citing *Beardsley*, 758 F.3d at 839).

Hofstad maintains that the ALJ failed to provide a good explanation for rejecting two of Dr. Meyers' opinions. *First*, according to Hofstad, the ALJ ignored Dr. Meyers' opinion that Hofstad could benefit from job-coaching services. In his psychological report, Dr. Meyers wrote, "The results of this psychological evaluation suggest that with psychiatric and other medical attention along with job coaching and placement assistance, a generally favorable long-term prognosis can be considered." R. 478. Hofstad believes this statement conditioned his assessed ability to return to work on assistance from a job coach. According to Hofstad, the ALJ's failure to address the need for a job coach was material error, as "[m]ost jobs do not provide 'jobs coaches,' and this heightened level of supervision is generally regarded as an accommodation." ECF No. 23 at 16 (citations omitted).

The ALJ did not err by failing to explicitly discuss Dr. Meyers' job-coaching comment in his decision. Social Security regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Dr. Meyers qualifies as an acceptable medical source, but his statement about job-coaching services does not clearly reflect a judgment about the nature and severity of Hofstad's impairments. The essence of Dr. Meyers' report is that Hofstad could work in a less stressful environment that involved simple

10

instructions and limited interaction with others. The statement about job coaching (and "placement assistance") appears to suggest that Hofstad would improve his chances of obtaining and keeping a job if he received coaching on how to deal with potential workplace triggers (for example, disagreements with coworkers), not that he'd need assistance with performing job duties. In other words, receiving job-coaching services would be ideal but not required. Because Dr. Meyer's job-coaching comment was not clearly a medical opinion, the ALJ didn't need to address it. *See, e.g.*, *Oliver v. Colvin*, No. 8:13-cv-2614-TBM, 2015 WL 10791904, 2015 U.S. Dist. LEXIS 192032, at *13–14 (M.D. Fla. Mar. 23, 2015) (finding that the suggestion for a job coach did not qualify as a medical opinion under Social Security regulations).

Other evidence in the record supports finding that Dr. Meyers' job-coaching comment is not a medical opinion (and that the ALJ didn't regard it as one). The ALJ thoroughly discussed Dr. Meyers' report and even noted that "Dr. Meyers believed that [Hofstad] had a favorable long-term prognosis if he received the appropriate treatment." R. 1761. This fact suggests that the ALJ did not miss or deliberately ignore Dr. Meyers' job-coaching comment; rather, he didn't think he needed to address it. Moreover, Dr. Meyers placed the job-coaching comment in the prognosis section of his report, but he did not repeat it in the statement-of-work capacity section. If Dr. Meyers had intended for job-coaching services to be a required work restriction, then he likely would have mentioned it when expressing his opinion on Hofstad's ability to work.

Contrary to Hofstad's belief, the earliest state-agency findings do not suggest that Dr. Meyers' job-coaching comment was a mandatory work restriction. The state-agency consultants who reviewed the record shortly after Dr. Meyers submitted his report included

11

the job-coaching comment in their summary of Dr. Meyers' medical source statement. *See* R. 96–97, 109–10. The consultants also assigned "great weight" to Dr. Meyers' opinion, noting that "[i]f [Hofstad] was to go to counseling and take meds there could be improvement and with job coaching he should be able to work in a less stress[ful] environment." R. 101, 114. In endorsing Dr. Meyers' findings, the reviewing consultants merely echoed what the examining consultant said: Hofstad's best chance at success involved counseling, medication, and job-coaching services. But that doesn't mean they thought Hofstad would be incapable of competitive employment *without* job coaching.

*Second*, Hofstad contends that the ALJ improperly discounted Dr. Meyers' opined workplace-interaction limitation. In the statement-of-work-capacity section of the report, Dr. Meyers indicated that Hofstad "may have some difficulty responding appropriately to supervisors and coworkers because of paranoid ideation." R. 478. According to Hofstad, the ALJ gave "no weight" to this opinion because it was "somewhat vague." ECF No. 23 at 17. He's mistaken.

The ALJ largely credited Dr. Meyers' workplace-interaction limitation. Specifically, the ALJ determined that limitation was "generally supported by the evidence showing that [Hofstad] reported feelings of anxiety, difficulty getting along with others, and paranoia." R. 1768. The ALJ did note that the "assessment was somewhat vague because Dr. Meyers did not set forth whether the claimant had mild, moderate, marked or extreme limitations for social interactions." *Id.* But the ALJ did not reject or discount Dr. Meyers' opinion on vagueness grounds. Rather, the ALJ simply remarked—accurately—that Dr. Meyers didn't express his opinion in functional terms. So the ALJ translated it into a specific RFC, finding that Hofstad can have only "occasional interaction with coworkers and supervisors," R. 1758,

12

1770, meaning up to one-third of the workday, *see* Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work— Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, 1996 SSR LEXIS 6, at *8–9 (July 2, 1996). Hofstad does not explain how that limitation fails to account for "some difficulty" responding appropriately to others in the workplace.

In sum, the ALJ did not err in evaluating Dr. Meyers' psychological report.

### III. Whether the ALJ Erred in Explaining Why He Rejected Dr. Kravitz's and Dr. Snyder's Opined Workplace-Interaction Limitation

Next, Hofstad argues that the ALJ erred in evaluating the prior administrative medical findings of the reviewing state-agency psychologists, Dr. Kravitz and Dr. Snyder. Reviewing psychologists "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). "An ALJ need not credit the opinions of the agency's own doctors, but *rejecting* the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (quoting *Beardsley*, 758 F.3d at 839). This is so because the agency's doctor is "unlikely . . . to exaggerate an applicant's disability, as the applicant is not his patient and favoritism with applicants would not go down well with the agency." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Hofstad takes issue with each of the reasons the ALJ gave for rejecting Dr. Kravitz's and Dr. Snyder's opinions that Hofstad should have only "brief and superficial" contacts with coworkers and supervisors: that Hofstad's medications effectively managed his symptoms, that Hofstad's mental-status exams revealed generally normal findings, and that Hofstad's

13

reported activities were inconsistent with the reviewing psychologists' opined limitation. If credited, the psychologists' opined workplace-interaction limitation suggests that Hofstad required a more restrictive RFC.

The ALJ here did not provide a convincing explanation for rejecting Dr. Kravitz's and Dr. Snyder's workplace-interaction limitation. *First*, the ALJ did not provide a logical bridge between much of the evidence he cited and Hofstad's documented history of emotional outbursts in the workplace. For example, it's unclear how Hofstad's ability to sustain attention and focus without redirection, normal speech and language, adequate memory, adequate fund of knowledge, ability to do math, and estimated IQ are inconsistent with the reviewing psychologists' belief that he should have only brief and superficial contact with others. The ALJ also cited examples of Hofstad going out in public, including shopping and attending a fireworks show. Confusingly, the ALJ concluded that Hofstad's brief and superficial *public* outings showed that he could engage in more than brief and superficial contact with coworkers and supervisors but also showed that he was unable to interact with members of the public. In other words, the evidence the ALJ cited seems to suggest that Hofstad had an easier time with strangers than his fellow workers; however, the ALJ's assessed RFC reflects the opposite. The ALJ did not explain this contradiction in his decision. Nor did he explain how Hofstad's limited public outings were inconsistent with the reviewing psychologists' opinion about his ability to interact with coworkers and supervisors. Ultimately, Hofstad's outings prove merely that he is not a complete recluse; they do not demonstrate, or even suggest, that he can maintain more than brief contact with others in the workplace.

*Second*, the ALJ overlooked evidence within the records he cited that contradicted his conclusion that Dr. Kravitz and Dr. Snyder were wrong to limit Hofstad to brief and

14

superficial contact with coworkers and supervisors. For example, at the same appointment where Hofstad reported good management of his symptoms with medication, he also indicated that he was still experiencing auditory and visual hallucinations and anxiety symptoms, especially when under stress. *See* R. 2402–03. Moreover, the ALJ's reliance on Hofstad's reported activities is perplexing because the nature of those activities appears consistent with the reviewing psychologists' opined limitations. Hofstad told his therapist that his "biggest struggle" at the grocery store was when he had to interact with someone at checkout. R. 550. Similarly, Hofstad stated that he didn't feel anxious at the Fourth of July fireworks show because "it was dark and 'nobody could see us.'" R. 663. And the fact that Hofstad reported having only one or two close friends, *see* R. 1723, is consistent with his mental-health issues impairing his ability to get along with others. Other evidence in the record supports that assessment. *See, e.g.*, R. 258 (reporting that he doesn't talk to family or friends, just his girlfriend), 476 ("He said that he has no contact with members of his family and that he does not have any friends presumably other than [his girlfriend]."), 643 ("The patient states he has been paranoid about other people. He feels there are people at work plotting against him. He states has been paranoid all the time. He is even paranoid of his girlfriend when she talks to other people.").

*Third*, with respect to the few records that could inform Hofstad's ability to interact with others, the ALJ failed to appreciate that Hofstad was not working at the time of those observations. Dr. Kravitz and Dr. Snyder emphasized that Hofstad's main mental-health symptoms—anxiety, irritability, and paranoia—manifested uniquely in the workplace. *See, e.g.*, R. 859–62, 904–06. So did Hofstad's treating providers. *See, e.g.*, R. 693 (noting significant limitations in interacting with others in the workplace), 1744–47 (same). In other words, the

15

stress of work and being around others in the workplace exacerbated Hofstad's symptoms, resulting in outbursts that led to him losing several jobs. Those past incidents formed the basis of the reviewing psychologists' opined workplace-interaction limitation. The ALJ, however, failed to explain how Hofstad's ability to engage appropriately with his treatment providers—while unemployed—was probative of his ability to perform in a competitive workplace. *See, e.g.*, *Grzegorski v. Saul*, No. 19-CV-1661, 2020 WL 5047555, 2020 U.S. Dist. LEXIS 155646, at *20 (E.D. Wis. Aug. 26, 2020) ("[A]ny inference from the fact that [the claimant] is sometimes able to appear with 'normal behavior, normal mood, appropriate demeanor,' etc. . . . during her medical appointments is limited, given that mental health patients are often much more comfortable with familiar treatment providers than they would be in a work setting.").

In sum, substantial evidence does not support the ALJ's decision to reject Dr. Kravitz's and Dr. Snyder's findings that Hofstad should have only brief and superficial contact with coworkers and supervisors.

IV. Whether the ALJ Failed to Sufficiently Explain His Assessed Workplace-Interaction Limitation

Finally, Hofstad argues that the ALJ failed to explain how his assessed RFC—which limited Hofstad to only occasional interaction with coworkers and supervisors—sufficiently accommodated Hofstad's moderate limitations in the workplace. According to Hofstad, limiting the *nature* of his workplace interactions was at least as important as limiting the *frequency* of those interactions. Hofstad asserts that his blow ups at work likely would persist even with negligible workplace interactions; it just may take a bit longer for him to accumulate enough "strikes" to get fired.

It seems that fewer contacts with others in the workplace would also imply more superficial contacts. Nevertheless, given that the ALJ failed to sufficiently explain why he

16

rejected the reviewing psychologists' findings—which did limit both the frequency and the nature of the contact—this issue may be moot. To the extent it's not, the ALJ on remand should consider whether Hofstad's problems in the workplace would still manifest with occasional contact with coworkers and supervisors.

## CONCLUSION

For all the foregoing reasons, I find that substantial evidence does not support the ALJ's evaluation of Dr. Kravitz's and Dr. Snyder's opined workplace-interaction limitation. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** the matter to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On remand, the Commissioner may also clarify her evaluation of Dr. Meyers' psychology report and more sufficiently explain the basis for any assessed workplace-interaction limitations.

**SO ORDERED** this 3rd day of August, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge